**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GUY C. PATTERSON,              )
                                       ) C.A. No. 18-193
       Plaintiff,           )

       v.

ANDREW M. SAUL,

       Defendant.

## OPINION AND ORDER

## SYNOPSIS

In this civil action, Plaintiff, an attorney proceeding pro se, brings claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. Plaintiff is a white male, born in June,1965, and currently in Defendant's employ as a Senior Attorney. Plaintiff's claims are based on his non-selection for the position of Appeals Officer, in 2014, and for Administrative Law Judge ("ALJ") in 2016 and 2017.

Specifically, Plaintiff's Amended Complaint asserts the following: With respect to the Appeals Officer non-selection, he avers disparate treatment due to age, race, and sex. With regard to the 2016 ALJ non-selection, he alleges disparate treatment due to race and sex. With regard to the 2017 ALJ non-selection, he alleges disparate treatment due to age, race, and sex. His retaliation claims allege that Plaintiff was not selected for the 2016 and 2017 ALJ positions in retaliation for his Equal Employment Opportunity ("EEO") filings challenging his non-selections.

Before the Court are the parties' cross-motions for summary judgment on all Counts. In addition, Plaintiff has moved for a preliminary injunction, seeking, inter alia, to enjoin Defendant from filling any vacancies for ALJ and Appeals Officers positions pending final judgment in this suit. For the following reasons, Plaintiff's Motions will be denied, and Defendant's granted.

## OPINION

### I.     SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. Marino v. Indus. Crating Co., 358 F. 3d 241, 247 (3d Cir. 2004); International Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Onmicare, Inc., 382 F. 3d 432 (3d Cir. 2004).

Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Cattrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 265 (1986). The sum of the affirmative evidence to be presented by the non-moving party must be such that a reasonable jury could find in its favor; it cannot simply reiterate unsupported assertions, conclusory allegations, or suspicious beliefs. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). A genuine issue for trial does not exist "unless the party opposing the

motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring).

Importantly, "if the non-movant's evidence is merely speculative, conclusory, 'or is not significantly probative, summary judgment may be granted.'" Raczkowski v. Empire Kosher Poultry, 185 Fed. App'x 117, 118 (3d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party." Jacobs v. Cumberland Cnty., No. 16-1523, 2019 U.S. Dist. LEXIS 92831, at *14-15 (D.N.J. May 31, 2019). Bald speculations, therefore, are insufficient. Johnson v. St. Luke's Hosp., No. 06-3417, 2007 U.S. Dist. LEXIS 78746, at *25 (E.D. Pa. Oct. 23, 2007).

## II.    FACTUAL BACKGROUND[1]

### A.  Appeals Officer Position

Plaintiff is a white male, born in 1965. On March 3, 2014, Defendant[2] issued a vacancy announcement for multiple Appeals Officer positions. Plaintiff applied to those positions on March 21, 2014. Defendant conducted oral interviews, or "structured oral interviews," for the position. The interviews were conducted by two-person panels, and all of the applicants referred by the Office of Personnel were interviewed, except for two applicants who withdrew or retired.

---

[1] Unless otherwise indicated, the facts stated in this Section and elsewhere in the Opinion are undisputed. The parties' factual statements have been considered pursuant to Local Rule 56.1, which provides as follows:

> Alleged material facts set forth in the moving party's Concise Statement of Material Facts…which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party.

[2] For ease of reference, Governmental offices and entities such as the Office of Personnel Management ("OPM") are encompassed by references to "Defendant." A particular office or entity, if pertinent, is specifically noted.

The interviewers were given written guidance on explaining the competencies related to each question, as well as proficiency level examples, explaining what would be considered poor, acceptable, good, or excellent answers.

In June, 2014, Plaintiff was interviewed by Administrative Appeals Judge Crawford and Administrative Appeals Judge Gabriel DePass. For each interview, the panel asked the same series of scripted questions. Most of the questions asked candidates to identify knowledge, skills, or experience relevant to particular aspects or qualities of the Appeals Council and Appeals Officer position. Three of the questions were hypothetical questions, which asked the interviewee what he or she would do as an Appeals Officer in handling a hypothetical case or situation. At Plaintiff's interview, he was asked the same scripted questions as the other candidates. Plaintiff testified that he has no reason to believe that he was treated differently than other interviewees, in terms of the questions asked and the interview process. Plaintiff's overall interview score was 16 out of a possible 28, as he was graded as having no "excellent" answers, three "good" answers, three "acceptable" answers, and one "poor" answer. This score was within the bottom 23 of the 93 candidates for the position. Judge Crawford testified that Plaintiff's age, race, and sex were not taken into account, which Plaintiff disputes.

Following 93 interviews, the Appeals Council compiled a spreadsheet of the candidates and their interview scores. It then continued the selection process for the 42 top-scoring interviewees, for whom it obtained references; each of them had interview scores of at least 20. As discussed supra, Plaintiff was not within that group. Defendant then selected 16 candidates,[3] who had interview scores higher than Plaintiff's, as well as strong references. Gerald Ray, the selecting officer, testified that Plaintiff's age, sex, marital status, parental status, and race were

_____

[3] It is unclear whether 14 or 16 candidates were initially selected. Defendant asserts, and Plaintiff does not dispute, that 14 were selected. Plaintiff asserts, and Defendant admits, that the position was offered to 16 candidates. For present purposes, the Court will accept Plaintiff's factual assertion of 16 candidates.

not taken into account. Plaintiff denies this claim, on grounds that the successful candidates all were more than five years younger than Plaintiff (and only one was over 40), 50/50 male/female, and "66/33 majority/minority." Plaintiff subsequently filed an EEO complaint, claiming that his non-selection for the Appeals Officer position resulted from discrimination because he was over 40, married, had children, and white.

### B. 2016 ALJ Position

On or about March 5, 2013, Defendant issued a vacancy announcement for an ALJ position. Plaintiff applied to the position on March 15, 2013.

A lengthy process results in interview teams conducting interviews, completing a composite rating sheet, and assigning "not recommend," "recommend," or "highly recommend" to each candidate.[4] In addition, applicants underwent a three-phase Office of Personnel Management ("OPM") application process, which resulted in a numerical rating. Following the completion of interviews and background checks, a team of two Hearing Office Chief ALJs conducted "folder reviews," which involved reviewing all of the candidates' information, including application records, background checks, social media background checks, results of interviews, and criminal and credit histories. The "folder review" team then rated each candidate, as "not recommend," "borderline recommend," "recommend," or "highly recommend." The selecting official then considered all the information, and decided which candidate was best qualified for the vacancies. The selecting official made determinations in accordance with

---

[4] Plaintiff objects to consideration of the results of Defendant's hiring process, particularly the "structured oral interview. He objects that the evidence is irrelevant and therefore inadmissible. I reject this contention. There can be no question that interviewers' ratings are "relevant" within the meaning of Federal Rule of Evidence 401.

applicable rules and regulations, including the "rule of three," or the "three strike rule," which can apply to candidates who have been considered and not selected for three prior positions.[5]

Plaintiff was interviewed on August 18, 2016. Mark Sochaczewsky, a white male, was the selecting official for the pertinent vacancies in 2016. ALJs William Wallis and Kurt Schuman conducted twenty interviews at the time. ALJ Schuman was unaware of Plaintiff's age and EEO activity, and testified that Plaintiff's sex and race were not considered in the selection decision. ALJ Wallis also testified that Plaintiff's race, sex, age, and prior EEO activity were not considered in the interview process.

Ratings for candidates were based on numerical scores assigned by interviewers, after they discussed the interview and reached a consensus. Interview responses were weighed based on a set variety of factors, including relevance of response and whether the question was ultimately answered. ALJs Schuman and Wallis rated Plaintiff's verbal communication skills as "poor," indicating that he provided hesitant and unorganized responses, was aggressive and argumentative, and provided inappropriate emotional responses. Their overall impression of Plaintiff was "poor," noting that he took a long time to provide responses that were not often on point, and they had a hard time following him. Their composite rating fell into the "not recommended" category. Interviewer comments noted that Plaintiff was "arrogant," "verbose," and that he "did not provide meaningful or relevant answers to most questions." The "folder review" revealed that Plaintiff's supervisor stated that she would not recommend him; another reference stated that he had "rather rough interpersonal skills." Mr. Sochazewsky testified that he considered Plaintiff for the ALJ position in three geographical locations. Plaintiff points to the notation "3C" next to his name for West Des Moines, IA and Morgantown, WV positions, and

---

[5] The "three strike rule," reflected in 5 C.F.R. § 332.405, states that an appointing officer is not required to consider an eligible who has been considered by him for three separate appointments.

posits that the notation means that he was "three struck" and never considered for those positions. Selections took place in September, 2016, and Plaintiff learned of his non-selection on or about November 20, 2016.

Of the twenty candidates interviewed, Mr. Sochaczewsky selected Monica Jackson (an African-American female), Robert Kelly (a white male), and William Stanley (a white male) for the positions. These candidates' respective ages in 2016 were 46, 55, and 58. The interview evaluations and folder reviews of the successful candidates show that Ms. Jackson, and Messrs. Kelly and Stanley, all were placed in the "highly recommend" or "recommend" category; their various skills and overall impression were listed as "outstanding." The record reflects that the interviewers had many positive comments about these candidates. Mr. Sochaczewsky testified that Plaintiff's non-selection was based on reasons such as his "not recommended" rating, and lack of recommendation by the folder reviewers. He testified that he did not consider protected traits in his selection decisions.

On January 20, 2017, Plaintiff filed a formal agency complaint regarding the 2016 ALJ non-selection, which resulted in a finding of non-discrimination.

### C. 2017 ALJ Position

Plaintiff remained eligible for future ALJ vacancies, because he had previously been placed on the register of eligible candidates. In February, 2017, he was notified that his name had been referred for consideration as an ALJ. Defendant asserts that Mr. Sochaczewsky was the selecting official for this position, while Plaintiff notes that a selection document bears the signature of Kathleen Scully Hayes as the selecting official in March 2017.[6] Ms. Scully-Hayes became aware of Plaintiff's EEO activity on January 6, 2017, due to her participation in a

---

[6] A "Certificate of Eligibles" with the notation "Issue Date 1/18/2017," bears Ms. Scully-Hayes' signature on the line "Selecting Official Signature," dated March 23, 2017. (Pl. App. 145-149).

mediation. Mr. Sochaczewsky testified that he became aware of Plaintiff's prior EEO activity when he received a witness letter dated February 23, 2017, after selecting for the 2016 ALJ position but prior to selecting for the 2017 ALJ position. Nonetheless, he testified that Plaintiff's age, sex, race, and prior EEO activity was not taken into account in the selection process. Instead, Mr. Sochaczewsky testified that Plaintiff's non-selection resulted from Plaintiff's prior consideration for three ALJ positions and the "three strike rule," as well as his prior lack of recommendation and OPM scores. Plaintiff became aware of his non-selection on April 20, 2017. Instead, Defendant selected Raymond Prybylski, a white male who was 45 in 2016, and Charles Belles, a white male who was 43 in 2016 (again, Plaintiff was 49 years old in 2016). Messrs. Prybylski and Belles were rated "recommended" and "highly recommended, respectively, and folder review results were "very good" or "outstanding."

## III. APPLICABLE LAW

### A. Title VII and ADEA

A failure to hire claim under Title VII involves the following proof: "a plaintiff must show that they (1) are a member of a protected class; (2) applied for a job for which they were qualified; and (3) were not hired for the job in question." McEady v. Camden Cnty. Police Dep't, No. 16-1108, 2019 U.S. Dist. LEXIS 173274, at *21 (D.N.J. Oct. 7, 2019). A disparate treatment claim, such as Plaintiff's, also requires proof of discriminatory intent. See Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 69 (3d Cir. 2017). Thus, a prima facie case requires a showing that "the adverse employment action occurred under some circumstances that give rise to an inference of unlawful discrimination." Robinson v. N. Am. Composites, No. 15-8702, 2017 U.S. Dist. LEXIS 86223, at *13 (D.N.J. June 6, 2017).

A prima facie case of age discrimination requires a showing that Plaintiff is forty years of age or older; the defendant took an adverse employment action against him; he was qualified for the position in question; and he was replaced by another employee who was "sufficiently younger to support an inference of discriminatory animus." Carter v. Mid-Atlantic Healthcare, LLC, 228 F. Supp. 3d 495, 501 (E.D. Pa. 2017) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013)). In an ADEA case, the plaintiff must also demonstrate that age was the "but for" cause of the employer's adverse decision. Id.

To establish a retaliation claim under either Title VII or the ADEA, a plaintiff must demonstrate that he engaged in a protected activity; his employer took adverse action against him, either after or contemporaneously with his protected activity; and there was a causal connection between the protected activity and the adverse action. Sylvester v. Unisys Corp., No. 97-7488, 1999 U.S. Dist. LEXIS 3607, at *33 (E.D. Pa. Mar. 25, 1999).[7]

In any discrimination case, "the Court's task … is to evaluate claims of invidious discrimination — it 'is not to assess the overall fairness of [the] employer's actions.'" Hernandez v. Borough of Fort Lee, No. 9-1386, 2010 U.S. Dist. LEXIS 56622, at *20 (D.N.J. June 8, 2010) (quoting Logue v. Int'l Rehab. Assocs., Inc., 837 F.2d 150, 155 n.5 (3d Cir. 1988)). Negligence, innocent error, or incompetence does not constitute discrimination. See Chiang v. Schafer, No. 2000-04, 2008 U.S. Dist. LEXIS 64654, at *122 (D.V.I. Aug. 20, 2008).

**B. McDonnell Douglas**

Plaintiffs' claims are subject to the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Thereunder, a plaintiff

---

[7] Plaintiff takes issue with Defendant's reference to the causation requirement identified in University of Texas Southwestern Med. Ctr. v. Nassar, 570 U.S 338, 133 S.Ct. 2517, 2530, 186 L.Ed.2d 503 (2013), as this case involves 42 U.S.C. 2000e-16 and 29 U.S.C. 633(a), rather than a private sector Title VII claim. I note that Courts within this District have relied on Nassar in Section 2000e cases. Phillips v. Donahoe, No. 12-410, 2013 U.S. Dist. LEXIS 160537, at *80 (W.D. Pa. Nov. 7, 2013)

bears the prima facie burden of demonstrating that he suffered an adverse employment action "under circumstances that give rise to an inference of unlawful discrimination." Greenawalt v. Clarion County, No. 11-2422, 2012 U.S. App. LEXIS 1696, at **5 (3d Cir. Jan. 30, 2012).

If the plaintiff meets his prima facie case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its conduct. McDonnell Douglas, 411 U.S. at 802. An employer satisfies its burden of production by introducing evidence that would permit the conclusion that there was a nondiscriminatory reason for its actions. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). The employer need not prove that the tendered reason actually motivated its behavior, and the Court must accept the proffer without measuring its credibility. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); Texas Dept. Of Comm. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). The employer's burden is "relatively light." Miller v. Patterson Motors, No. 3:2007-33, 2009 U.S. Dist. LEXIS 24482, at *50 (W.D. Pa. Mar. 24, 2009).

Once an employer presents evidence of a legitimate reason for its actions, the burden shifts back to Plaintiff to show that the proffered reason is a pretext for discrimination. Iadimarco v. Runyon, 190 F.3d 151, 158 (3d Cir. 1999). To do so, a plaintiff must submit evidence from which a reasonable fact finder could either disbelieve the employer's articulated legitimate reasons; or conclude that discrimination was more likely than not a motivating or determinative cause of the employer's action. Carter, 228 F. Supp. 3d at 506; see also Fuentes, 32 F.3d at 762. In other words, the plaintiff's evidence "must allow a factfinder to reasonably infer that each of the employer's proffered nondiscriminatory reason[] . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action." Fuentes, 32 F.3d at 764 (citations omitted). "[T]o discredit the employer's proffered reason . . . the plaintiff cannot simply show

that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Id. at 765. "[A]t the pretext stage .. the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity." Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998).

"Differential treatment is, of course, the sine qua non of a discrimination claim. Despite the burden-shifting paradigm at play in such a case, the ultimate burden of proving intentional discrimination rests, at all times, with the plaintiff." Reynolds v. Port Auth., No. 8-268, 2009 U.S. Dist. LEXIS 54760, at *27 (W.D. Pa. June 26, 2009). Ultimately, therefore, the plaintiff must convince the factfinder "'both that the [employer's proffered] reason was false, and that discrimination was the real reason.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S. Ct. 2742, 2754, 125 L. Ed. 2d 407 (1993).

## IV. THE PARTIES' SUMMARY JUDGMENT MOTIONS

### 1. Disparate Treatment – Race and Sex

### 2016 and 2017 ALJ Positions and Appeals Officer Position

Plaintiff claims discrimination arising from disparate treatment based on race and sex, in the context of his non-selection for Appeals Officer, and both the 2016 and 2017 ALJ positions.

Plaintiff rests his Title VII discrimination claims, based on his status as a white male, on a theory of disparate treatment. Essential to Plaintiff's prima facie case is an inference of discrimination. Mitchell v. Cmty. Educ. Ctrs., Inc., No. 14-5026, 2016 U.S. Dist. LEXIS 59105, at *19 (E.D. Pa. May 2, 2016). A plaintiff may raise an inference of discrimination "in a number of ways, including, but not limited to, comparator evidence." Golod v. Bank of Am. Corp., 403 F. App'x 699, 702 n.2 (3d Cir. 2010). In order to demonstrate discrimination using comparator

evidence, "comparator employees must be similarly situated in all relevant respects." Mitchell, 2016 U.S. Dist. LEXIS at *22 (quoting Wilcher v. Postmaster Gen., 441 F. App'x 879, 882 (3d Cir. 2011)).

In this case, Plaintiff relies on comparator evidence. He avers that the Appeals Officer position was offered to sixteen people. Of the successful candidates, eleven were white, and eight were men (including six white men). Thus, 68.75% of the successful candidates were white, and 50% were men. Two white men and one black woman were selected for the 2016 ALJ position; for the 2017 ALJ position, two white men were selected. These statistics patently do not raise an inference that Defendant discriminated against white men in selecting for these positions – indeed, without more, they do not indicate disparate treatment based on race or sex in the first instance.[8] "[T]he comparator employees are of multiple races and both genders, which does not support a claim that race and gender were motivating or determinative factors in the adverse employment actions." Wilcher, 441 F. Appx. at 882. To the extent that Plaintiff relies on his subjective assessment that he was more qualified than the successful candidates for each position, this is not persuasive. Holmes v. FAA, No. 98-5071, 1999 U.S. Dist. LEXIS 14955, at *27 (D.N.J. Sep. 29, 1999).

Furthermore, Plaintiff has not shown that the proffered comparators were similarly situated to Plaintiff. For each vacancy at issue, for example, Plaintiff was rated "not recommended", while other candidates – including white men -- were rated "recommended" or "highly recommended," based on a variety of factors. The record reflects other differences, as

---

[8] Plaintiff asserts that Mr. Sochaczewsky's selection history – reflecting the selection of 49% female, and 12 % black candidates – closely approximates the respective groups' representation in the general population. To Plaintiff, this is suspicious. To the contrary, "it is ordinarily to be expected that nondiscriminatory hiring practices will in time result in a work force more or less representative of racial or ethnic composition of the population …." See, e.g., Vuyanich v. Republic Nat'l Bank, 505 F. Supp. 224, 345 (N.D. Tex. 1980) The Court notes that the record contains no information about the candidates who were not selected for the positions to which Plaintiff applied. General population statistics "lose their significance" when they are not "reasonable proxies for the applicant pool." Reynolds v. Sheet Metal Workers, 498 F. Supp. 952, 968 (D.D.C. 1980).

well. For example, one of the successful candidates' supervisors spoke highly of her, as noted in her folder review; Plaintiff's supervisor stated that she would not recommend him. Such factors further belie the allegation that Plaintiff was singled out for differential treatment because he was a white male. The mere fact that among the successful hires were women, including non-white women, is woefully insufficient to raise the required inference; the record is devoid of other supporting evidence. There is no evidence that calls into question the selecting and interviewing persons' testimony that Plaintiff's race and sex did not factor into the decisionmaking process.

Assuming that Plaintiff has made a prima facie case of race and sex discrimination, Defendant has met its burden to produce legitimate, nondiscriminatory reasons for Plaintiff's non-selection. As recited supra, Defendant proffers that Plaintiff was not selected for the Appeals Officer position because of his composite proficiency rating, which placed him in the bottom 20 of the 93 candidates interviewed. As regards the 2016 ALJ position, Defendant points to Plaintiff's lower interview ratings, and the results of his folder reviews. Further, Defendant proffers evidence that Plaintiff was not considered for the 2017 ALJ position as a result of his non-selection in 2016, both due to "three strikes" and the reasons underlying his 2016 non-selection. The interviewer's notes and guidelines support Plaintiff's ratings. The successful candidates received higher ratings and more positive reviews than did Plaintiff. "Better performance in an interview is unquestionably a legitimate, nondiscriminatory basis to hire one candidate over another." Formella v. Brennan, 817 F.3d 503, 514 (7th Cir. 2016); see also McCann v. Astrue, 293 F. App'x 848, 851 (3d Cir. 2008). Likewise, the "three strike rule,"and the reasons underlying Plaintiff's non-selection in 2016, meet Defendant's burden. Thompson v. Bridgeton Bd. of Educ., 613 F. App'x 105, 108 (3d Cir. 2015). Thus, the burden shifts again to Plaintiff, to show that Defendant's explanations are pretextual.

In order to show that Defendant's explanations regarding the 2017 ALJ position are pretextual, Plaintiff points to two facts specific to his non-selection for the that position: The notation "3C" next to his name, which he asserts indicates that he was not previously considered for three positions. This, he claims, demonstrates the falsity of Defendant's explanation that he was not selected due to the "three strike rule." He also points to the appearance of Ms. Scully-Hayes's name as selecting officer on the list of eligibles for that position, rather than Mr. Sochaczewsky's. The significance of the latter is unclear, as there is no particular evidence that suggests a nexus between either person and discriminatory intent; a dispute as to the identity of the selecting officer is not material in this context, and doesn't call Defendant's explanation into question. As to the former, Plaintiff does not explain why the "3C" notation contradicts Mr. Sochaczewsky's contention that he was "three-struck" for the 2017 ALJ position because he had already been considered for three positions, including the two annotated with a "3C." Plaintiff points solely to the existence of the notations, and his own interpretation thereof. Further, the "three strike rule" was not the sole proffered basis for Plaintiff's non-selection; other reasons included the grounds for his initial non-selection for the same position in 2016. As discussed supra, Plaintiff has not demonstrated that those grounds were pretexts for race or sex discrimination. Plaintiff's showing is not sufficient under Rule 56, Local Rule 56.1, or McDonnell Douglas.

To support his claim, Plaintiff challenges only the qualifications of Ms. Jackson, the African-American female selected, along with two white males, for the 2016 ALJ position. He cites to Hamilton v. Geithner, 666 F. 3d 1344 (Fed. Cir. 2012), which indicates that disparities alone are sufficient to raise the required inference, only if the plaintiff is markedly, substantially, or significantly more qualified than the successful candidate. Id. at 1352. Plaintiff, for example,

compares his 18 years of legal experience with Ms. Jackson's 16 years; his 13 years of civil service with her eight years; and his six performance awards with her five. These facts relate to a single comparator, ignore the contemporaneous white male hires, fail to account for other selection considerations, and do not, overall, represent marked disparities. Plaintiff also notes that Ms. Jackson attended a non-ABA approved law school, had a deferred license suspension in 2008, and that a year lapsed between her law school graduation and admission to the bar. Given the circumstances – including the outcomes of the interview and review process -- these alleged "flaws" in Ms. Jackson's resume do not establish pretext on the basis of race or sex.

Plaintiff also points to his own purportedly superior qualifications. He suggests, for example, that his satisfactory performance appraisals and cash bonuses during his years of employment with Defendant suffice to demonstrate pretext. The mere existence of positive feedback, however, does not give rise to the inference that negative evaluations from another assessor were pretextual. Hunter v. Rowan University, 299 Fed. Appx. 190, 194-95 (3d Cir. 2008). A person may perform well at his job, but not be the preferred candidate for another, even without illegal motive on the part of the employer. Plaintiff asserts that the bulk of Ms. Jackson's experience was as a group supervisor, while his own was non-supervisory. Why this experience should be deemed material, however, is wholly unclear. Again, "the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. To discredit an employer's explanation at the pretext stage, a plaintiff must do more than argue that the employer's action was wrong. Wilcher, 441 F. App'x at 891. Here, the record simply contains no suggestion of animus based on sex or race.

Finally, Plaintiff devotes much of his energy to challenging the manner in which Defendant developed its hiring process and the process itself.[9]  Specifically, Plaintiff objects to Defendant's use of a "structured oral interview."  The essence of his argument is that Defendant concocted a "spurious selection procedure" in order to hire more female and black candidates.  The process was spurious, he posits, because the "structured oral interview" did not comply with the policy that selection criteria be "job-related" and "professionally developed."  Plaintiff argues as follows: "absent rigorous evidence of what, if anything, the process proves about future job performance [such as verbatim transcripts instead of interviewer notes], it is little more than a license to discriminate."

To the extent that Plaintiff suggests that the subjective components of the hiring process are dispositive, I reject that proposition.  The mere presence of a subjective evaluation mechanism does not give rise to an inference of pretext. "Title VII does not eliminate any and all subjective considerations from employment decisionmaking." <u>Villarias v. Illinois</u>, No. 92 C 8420, 1995 U.S. Dist. LEXIS 11554, at *9 (N.D. Ill. Aug. 7, 1995).  Instead, a plaintiff must show a link between the subjective mechanism and discriminatory intent.[10] <u>Whitaker v. TVA Bd. of Dirs.</u>, No. 3:08-1225, 2010 U.S. Dist. LEXIS 37177, at *21 (M.D. Tenn. Apr. 14, 2010). Certainly, subjective processes cannot be used to "cover up" illegal animus.  It is undisputed here that the interviewers here asked the same scripted questions to all candidates, and were given written guidance regarding assessing the competencies related to each question. Upon scrutiny,

---

[9] Absent any suggestion that Defendant failed to follow the same selection process for each candidate, Plaintiff's Amended Complaint appears to implicate disparate impact. Plaintiff specifically disclaims a disparate impact claim, however.

[10] In that vein, mere dislike does not "rise to the level of discrimination unless the disparate treatment is motivated by discrimination."  <u>White v. Cleary</u>, No. 09-4324 (PGS), 2012 U.S. Dist. LEXIS 36694, at *22 (D.N.J. Mar. 16, 2012).

there is no evidence suggesting a discriminatory motive on the part of Defendant or any of the participants in the interview process.

Next, I turn to Plaintiff's contentions that the hiring processes failed to comply with regulatory and policy requirements that they be "job-related" and "professionally developed." The applicable regulation reads as follows: "There shall be a rational relationship between performance in the position to be filled (or in the target position in the case of an entry position) and the employment practice used. The demonstration of rational relationship shall include a showing that the employment practice was professionally developed." 5 C.F.R. § 300.103.

Plaintiff has not identified any evidence to suggest that the alleged non-compliance of the facially neutral selection processes bears any relation to his claims of disparate treatment. It is undisputed that numerous attorneys and persons with experience related to the job positions were involved in developing the challenged processes. The involved persons included Defendant's Division Chief Judges and former Executive Director, as well as Jodie-Beth Galos, an attorney with 25 years of experience in employment law, as well as leadership experience in human resources. Plaintiff questions the expertise of the participants, but does not explain why it falls short. He cites to no authority supporting his interpretation of the regulatory phrase "professionally developed" as requiring particular expertise in designing pre-employment selection procedures. Even if the interview development was somehow insufficiently "professional," the deficiency does not call Defendant's legitimate explanations into question.

Further, Plaintiff's assertion that the "structured oral interview criteria" bore no actual relationship to the employment at issue is not borne out by either the facts or common sense.[11]

---

[11] Outside of the context of Section 300.103, one court has noted: "The bulk of the cases which have addressed the requirement that hiring criteria be shown to be job-related have arisen in the context of a specific and usually inflexible requirement that an applicant pass a particular test or possess a particular degree or other objective

For example, it is undisputed that most of the questions "asked candidates to identify knowledge, skills, or experience relevant to particular aspects of the Appeals Council and Appeals Officer position," and that three of the questions asked candidates about handling a hypothetical case or situation reviewing an ALJ decision. Plaintiff acknowledged that the questions were "related to" the job, and were "on the nose as far as the position…." Plaintiff's demand for "rigorous" evidence of job-relatedness puts the cart before the horse. He explains neither his conclusory assertion of unrelatedness, nor its connection to his allegations of discriminatory motive. "[T]he mere fact that a different, perhaps better, method of evaluation could have been used is not evidence of pretext unless the method that was used is so deficient as to transgress the <u>Fuentes</u> standard." <u>Kautz v. Met-Pro Corp</u>., 412 F.3d 463, 471 (3d Cir. 2005). The method used here was not "so deficient" in that regard.

The case of <u>McCann v. Astrue</u>, 293 F. App'x 848 (3d Cir. 2008), is generally instructive. There, our Court of Appeals considered the District Court's entry of judgment against a white man employed by the Social Security Administration, in a racial discrimination suit. <u>Id.</u> at 849. Plaintiff had not been selected for a promotion that he applied to, and a black man received the position, Id. at 851. The decisionmaker told plaintiff "that given his extensive experience and high performance, were he anything other than a white male, he would have been promoted long ago." <u>Id.</u> Plaintiff also produced evidence that in other hiring decisions, decisionmakers were told that they could not hire white candidates. <u>Id.</u> The defendant explained, <u>inter alia</u>, that plaintiff had performed poorly at his interview, and lacked leadership skills. <u>Id.</u> The successful candidate was selected, in part, because of his leadership ability. <u>Id.</u> at 852. At the pretext stage, the stray remark by the decisionmaker was deemed insufficient, and that decision was affirmed.

---

measure of qualification." <u>Vuyanich v. Republic Nat'l Bank</u>, 505 F. Supp. 224, 369 (N.D. Tex. 1980). This is true, as well, in the Section 300.103 context. <u>See</u>, <u>e.g.</u>, Fox v. Washington, 396 F. Supp. 504, 507 (D.D.C. 1975).

Id.  The present evidence is weaker than that presented in McCann, and the result in that case supports today's findings.

### 2.  Age Discrimination – 2017 ALJ Position and Appeals Officer Position

I next address Plaintiff's ADEA Claims.  In the first instance, if considered alone, I note concerns about Plaintiff's prima facie case as to the 2017 ALJ position. "Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and ... her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made." Gutknecht v. SmithKline Beecham Clinical Labs., 950 F. Supp. 667, 672 (E.D. Pa. 1996); see also Carter, 228 F. Supp. 3d at 502 (collecting cases).  Both successful candidates for the 2017 ALJ position were white males, ages 45 and 43 in 2016; Plaintiff was 49 at that time.  Nonetheless, I will proceed under the assumption that Plaintiff has met his prima facie case under the ADEA with respect to both the 2017 ALJ Position and the Appeals Officer position.

Because Defendant has proffered a legitimate explanation for Plaintiff's non-selection for both positions, the analysis moves to the pretext stage. Again, this requires Plaintiff to submit evidence from which a factfinder could reasonably either disbelieve Defendant's articulated reasons, or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of Defendant's action. Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  "While plaintiff need not provide additional evidence to rebut an employer's proffered reasons for an adverse employment action, evidence previously used to establish a prima facie case must be sufficient to satisfy the 'more stringent question of whether the evidence is sufficient to establish pretext, rather than whether the evidence is sufficient to establish an inference of discrimination.'"  Boice v. SEPTA, No. 05-4772, 2007 U.S. Dist. LEXIS 74566, at

*38 (E.D. Pa. Oct. 5, 2007) (quoting <u>Taylor v. Proctor & Gamble Dover Wipes</u>, 184 F. Supp. 2d 402, 414 (D. De. 2002)).

As discussed <u>supra</u>, Plaintiff failed to demonstrate pretext in the context of his Title VII claim based on the 2017 ALJ position. If the alleged illegal motive is age, rather than race and sex, the outcome is the same.[12] In fact, it is not clear that the two selectees are appropriate comparators, and the previous year, Defendant selected two men older than Plaintiff for the same position. With respect to the Appeals Officer position, all but one of the 16 successful candidates were under 40 years of age, and the remaining successful candidate was 44. However, it is undisputed that Defendant conducted 93 interviews for the position, and then continued the process for 42 of those candidates. Sixteen of those 42 were selected. Plaintiff has not identified, for example, any information about the 77 other people who were not selected for the position; further, he has not offered material information about the qualifications of the successful candidates. There is no basis for assessing these people as appropriate comparators, and evidence about inappropriate comparators cannot establish pretext. <u>Jones v. Hosp. of Univ. of Pa</u>., No. 03-CV-4938, 2004 U.S. Dist. LEXIS 15711, at *23 (E.D. Pa. Aug. 5, 2004). Ages of selectees alone, in a vacuum, are simply insufficient to show pretext. [13]

### 3. Retaliation – 2016 and 2017 ALJ Positions

Finally, Plaintiff claims that he was not selected for the 2016 and 2017 ALJ positions in retaliation for his EEO activity. It is undisputed that Mr. Sochaczewksy learned of Plaintiff's EEO activity by letter dated February 23, 2017. In addition, Ms. Scully-Hayes knew of his EEO activity, because she attended a mediation on January 6, 2017. Plaintiff suggests that the timing

---

[12] The 2016 ALJ position, for which Plaintiff does not claim age discrimination, provides additional context: the three successful candidates for that position were 46, 55, and 58 years old in 2016, while Plaintiff was 49.

[13] The fact that this selection event "ballooned" the percentage of under-40 employees in the work unit from 7.5% to 30.9% does not raise the spectre of age discrimination. The age distribution in Defendant's work unit prior to the Appeals Office selection process is not suggestive of age discrimination.

of this knowledge and his non-selection entitles him to judgment in his favor, and precludes judgment in favor of Defendant.

Mr. Sochaczewsky, the selection officer for the 2016 ALJ position, testified that he was unaware of Plaintiff's prior EEO activity at the time. Plaintiff has presented no evidence to contradict this testimony. "Activity about which defendant knows nothing cannot motivate it to take any action." Graham v. Methodist Home for the Aging, No. 11-1416, 2012 U.S. Dist. LEXIS 117194, at *64 (N.D. Ala. Aug. 20, 2012). This factor is fatal to Plaintiff's claim that his non-selection for the 2016 ALJ position was retaliatory.

In terms of the 2017 ALJ position, both Mr. Sochaczewksy and Ms. Scully-Hayes were aware of Plaintiff's EEO complaints prior to his non-selection.  The mere fact that a defendant knew about a plaintiff's protected activity prior to the challenged action does not raise a genuine issue about whether that defendant acted with a retaliatory motive. Macknet v. Univ. of Pa., No. 15-5321, 2017 U.S. Dist. LEXIS 148948, at *18-19 (E.D. Pa. Sep. 14, 2017). "Were the rule otherwise, then a disgruntled employee, no matter how poor his performance … could effectively inhibit a well-deserved [adverse action] by merely filing, or threatening to file, a discrimination complaint." Rolfs v. Home Depot U.S.A., Inc., 971 F. Supp. 2d 197, 217 (D.N.H. 2013) (quoting Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013)).

Plaintiff also points, however, to the temporal proximity between decisionmakers' awareness of his protected activity and his non-selection. Our Court of Appeals has made clear that "the mere fact that an adverse employment action occurs after a plaintiff engages in protected activity is insufficient to establish a causal link." McCann, 293 F. App'x at 852. Pertinent here, an employee may establish the required nexus if he shows "unusually suggestive" temporal proximity between the protected activity and the adverse action. McEady v. Camden

Cnty. Police Dep't, No. 16-1108, 2019 U.S. Dist. LEXIS 173274, at *39 (D.N.J. Oct. 7, 2019).

"[C]ases that accept mere temporal proximity between an employer's knowledge of protected

activity and an adverse employment action as sufficient evidence of causality to establish a prima

facie case uniformly hold that the temporal proximity must be very close."  Clark Cty. Sch. Dist.

v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001). Absent an "unusually

suggestive" time frame, other circumstantial evidence must exist to support causation. Thomas-

Taylor v. City of Pittsburgh, No. 13-164, 2014 U.S. Dist. LEXIS 114615, at *24 (W.D. Pa. Aug.

18, 2014), aff'd, 605 F.App'x 95 (3d Cir. 2015).

Again, Mr. Sochazcewsky became aware of Plaintiff's protected activity by letter dated

February 23, 2017. Ms. Scully-Hayes became aware on January 6, 2017. Plaintiff's Amended

Complaint alleges that he was notified that his name had been referred for the 2017 ALJ

position, and he submitted requested paperwork, on February 13 and 17, respectively. Plaintiff's

non-selection occurred on or about March 23 or 24, 2017. "The majority of the case law supports

a conclusion that [a one-month gap] is not unusually suggestive." Thomas-Taylor, 2014 U.S.

Dist LEXIS 114615, at *24. Moreover, I note that the time frame here was dictated by the

parameters of the vacancy and hiring processes. The timing of an employer's decision to take

adverse action, when wholly unfettered by externally imposed time constraints, presents a

different and potentially more suspect situation. Again, Defendant proffers that Plaintiff was not

selected based on his earlier non-selection for the 2016 ALJ position.  The connection between

Plaintiff's EEO activity and the non-selection is thus attenuated, and the timing is not "unusually

suggestive" under the circumstances.  Plaintiff offers no additional evidence causally connecting

his non-selection to retaliatory animus.

Assuming that Plaintiff has succeeded in meeting his <u>prima facie</u> case, Defendant has proffered legitimate, non-discriminatory reasons for Plaintiff's non-selection, discussed <u>supra</u>. Thus, Plaintiff must demonstrate that Defendant's explanation was a pretext for retaliation. In a retaliation case, a Plaintiff has a lesser burden at the <u>prima facie</u> stage than at the pretext stage. <u>Macknet</u>, 2017 U.S. Dist. LEXIS 148948, at *29. Moreover, a Plaintiff cannot rely solely on temporal proximity to establish pretext. <u>Pierce v. City of Phila.</u>, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *41 (E.D. Pa. Dec. 28, 2018). The chronology here, absent more, neither calls into question Defendant's explanations nor suggests retaliatory motive under applicable standards. Plaintiff proffers no additional evidence that would permit a reasonable jury to find otherwise.

### V. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction. Therein, Defendant contends that Defendant has solicited applications for fifteen Appeals Officer positions. Plaintiff seeks an injunction enjoining Defendant from filling any ALJ or Appeals Officer positions absent proof of compliance with 5 C.F.R. 300.103; from taking formal or informal disciplinary action against Plaintiff in retaliation for this litigation; and from "failing or refusing to treat Plaintiff in the manner in which his position and job performance warrant." Because summary judgment motions been adjudicated, no evidentiary hearing is required.

Our Court of Appeals has warned that "the dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat." <u>Holiday Inns of America, Inc. v. B & B Corp.</u>, 409 F.2d 614, 618 (3d Cir. 1969). As Plaintiff states, issuance of a preliminary injunction requires him to demonstrate: 1) a reasonable likelihood of success on the merits; 2) a likelihood of irreparable injury; 3) whether an injunction would harm

the defendant more than denying relief would harm the plaintiff; and 4) whether granting relief would serve the public interest. K.A. ex rel. Ayers v. Pocono Mt. Sch. Dist., 710 F.3d 99, 105 (3d Cir. 2013). Given the outcome of the parties' summary judgment Motions, Plaintiff has not established a reasonable likelihood of success on the merits, and injunctive relief will be denied.

## CONCLUSION

In conclusion, assuming that Plaintiff has met his prima facie case for all claims, he has not proffered evidence from which a reasonable fact finder could either disbelieve Defendant's articulated legitimate reasons, or conclude that an illegal animus was more likely than not a motivating or determinative cause of his non-selection for any position at issue. It may well be that Plaintiff would make an excellent ALJ or Appeals Officer, and that Defendant's failure to select Plaintiff for the three positions at issue was ill-advised. Even so, a court cannot rule on the wisdom of an employer's decisions. Instead, this Court's role is limited to assessing the presence of illegal discrimination. As Plaintiff points out, a desire for diversity is not a defense to a discrimination claim; nor does the mere presence of diversity, however, suggest discrimination.

Here, viewing the facts in the light most favorable to the non-moving parties, there is no genuine issue of material fact that precludes the entry of judgment in Defendant's favor, or entitles Plaintiff to judgment in his favor. Plaintiff's Motion will be denied, and Defendant's granted as to all Counts.  For similar reasons, Plaintiff's Motion for Preliminary Injunction will be denied.  An appropriate Order follows.


BY THE COURT:

_____

Donetta W. Ambrose
Senior Judge, U.S. District Court

Dated:  February 13, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


GUY C. PATTERSON,              )
                               ) C.A. No. 18-193

      Plaintiff,              )

      v.

ANDREW M. SAUL,

      Defendant.


**ORDER OF COURT**

AND NOW, this 13th day of February, 2020, it is hereby ORDERED, ADJUDGED, and

DECREED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's is

GRANTED, and that Plaintiff's Motion for Preliminary Injunction is DENIED.

BY THE COURT:

_____

Donetta W. Ambrose
Senior Judge, U.S. District Court